EFILED
5/11/2020 8:56 AM
CIRCUIT CLERK
PATRICIA A. HIHER

**IN THE CIRCUIT COURT
FOR THE FIFTEENTH JUDICIAL CIRCUIT
CARROLL COUNTY, ILLINOIS**

| | | |
|---|---|---|
| Kevin Promenschenkel and Peggy Promenschenkel dba Poopy's Pub & Grub | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2020-CH-_____ |
| | ) | **2020CH8** |
| Governor Jay Robert Pritzker, in his official capacity. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

<u>**VERIFIED COMPLAINT FOR DECLARATORY
JUDGMENT AND INJUNCTIVE RELIEF
AGAINST GOVERNOR JAY ROBERT PRITZKER**</u>

COMES NOW Plaintiff, Kevin Promenschenkel and Peggy Promenschenkel dba Poopy's Pub & Grub (hereinafter referred to as "Poopy") by and through their attorneys, Thomas G. DeVore, Erik Hyam, and DeVore Law Offices, LLC, and for their Verified Complaint for Declaratory Judgment and Injunctive Relief against Defendant, Governor Jay Robert Pritzker (hereinafter referred to as "Pritzker"), in his official capacity, and hereby alleges as follows:

1.  On April 30, 2020, Pritzker entered his third sequential disaster proclamation regarding COVID-19. (hereinafter "Proclamation #3") (See attached Exhibit 1)

2.  Pritzker issued Proclamation #3 under the authority granted him under the Illinois Emergency Management Agency Act. (See also 20 ILCS 3305 *et seq.* which is hereinafter referred to as the "IEMAA")

3.  The IEMAA states: "In the event of a disaster, as defined in Section 4, the Governor may by proclamation declare that a disaster exists. (See Section 4 of The IEMAA)

4. It was Pritzker's belief the COVID-19 virus constituted a disaster as defined under The IEMAA on April 30, 2020.

5. As a result of Proclamation #3, Pritzker issued Executive Order 2020-32. (hereinafter "EO 32") (See Exhibit 2)

6. Poopy is the owner of a business located in Carroll County, IL.

7. Unfortunately, Poopy's premises were ordered closed by EO 32 due to an arbitrary and capricious determination the business property was deemed a public health risk. (See Section 2-2 and 12a-12w of EO 32)

8. At no time relevant, has the local health department investigated Poopy's regarding the premises allegedly being contaminated, or suspected of being contaminated, with any infectious disease.

9. At no time relevant, did Poopy ever get notice from anyone the business premises were being forcibly closed.

10. At no time relevant, did Poopy get notice from anyone advising them of their constitutional rights to due process, wherein they could contest the decision of the forcible closure of their business premises, which rights included the right to counsel.

11. As to the matter of notice, upon information and belief, Pritzker must have presumed Poopy heard about EO 32 which stripped their fundamental liberties at one of Pritzker's daily press briefings if Poopy happened to be watching that day, or maybe Poopy might have heard it from one of their friends in passing.

12. While most recently EO 32 closed Poopy's business premises from May 01 to May 30, their business premises have been closed due to similar executive orders of Pritzker since on or about March 20, 2020.

13. Just recently Poopy began allowing patrons to merely sit outside on an adjacent lot where picnic tables were spread 10 feet apart.

14. At no time, has any of Poopy's activities on their business premises meet with any resistance from the local health department.

15. Notwithstanding Pritzker has stated EO 32 would be enforced locally, but when the local health department, which is the supreme authority on the issue, did not find it necessary to take action against Poopy's, the Illinois Liquor Control Commission threatened to take Poopy's ILCC license and further threatened them with unknown criminal and civil penalties. (See Exhibit 3)

16. As alleged authority to order Poopy's businesses premises closed to the public, Pritzker relies on two authorities:

   a) Powers vested in him as the Governor of the State of Illinois.

   b) Sections 7(1), 7(2), 7(3), 7(8), 7(9) and 7(12) of The IEMAA.

   (See the "THEREFORE" clause on page 2 of EO 32)

17. Pritzker further states the powers utilized to mandate Poopy's closure were consistent with public health laws. (See the "THEREFORE" clause on page 2 of EO 32)

18. Upon information and belief, the public health laws which Pritzker states is consistent with his authority to close Poopy's premises in EO 32 is assuredly the Illinois Department of Public Health Act, being 20 ILCS 2305 *et seq.* (hereinafter referred to as "IDPHA") (See the "THEREFORE" clause on page 2 of EO 32)

19. IDPHA has general supervision of the interests of the health and lives of the people of the State. (See 20 ILCS 2305/2(a))

20. It has **supreme** authority on business closure matters to protect the public health. *Id.*
    (Emphasis Added)

21. EO 32 states the authority wielded by Pritzker therein was not to limit the authority of any
    state, county, or local government body regarding business closures. (See Section 19 of EO
    32) (Emphasis Added)

22. Whether Pritzker has the authority to suspend the IDPHA is not a question currently in front
    of this Court, as Pritzker expressly stated he was not attempting to limit the same.

23. So as for this present matter currently in front of the Court, the IDPHA is the supreme
    legislative authority over business closures which this Court must rely.

24. Subject to the provisions of subsection (c) of the IDPHA, **the Department** may order a place
    to be closed and made off limits to the public to prevent the probable spread of a dangerously
    contagious or infectious disease until such time as the condition can be corrected or the
    danger to the public health eliminated or reduced in such a manner that no substantial danger
    to the public's health any longer exists. (See 20 ILCS 2305/2(b).)

25. Except as provided in this Section, no place may be ordered to be closed and made off limits
    to the public except with the consent of the person or owner of the place or upon the prior
    order of a court of competent jurisdiction. (See 20 ILCS 2305/2(c).)

26. The Department may, however, order a place to be closed and made off limits to the public
    on an immediate basis without prior consent or court order if, in the reasonable judgment of
    the Department, immediate action is required to protect the public from a dangerously
    contagious or infectious disease. *Id.*

27. In the event of an immediate order issued without prior consent or court order, the
    Department shall, as soon as practical, within 48 hours after issuing the order, obtain the

4

consent of the person or owner or file a petition requesting a court order authorizing the closure. *Id.*

28. To obtain a court order, the Department, by clear and convincing evidence, must prove that the public's health and welfare are significantly endangered as the business is a place where there is a significant amount of activity likely to spread a dangerously contagious or infectious disease. *Id.*

29. The Department must also prove that all other reasonable means of correcting the problem have been exhausted and no less restrictive alternative exists. *Id.*

30. Businesses that are ordered to be closed and made off limits to the public, shall be given a written notice of such order. The written notice shall additionally include the following: (1) notice of the right to counsel; (2) notice that if the person or owner is indigent, the court will appoint counsel for that business owner; (3) notice of the reason for the order for closure; (4) notice of whether the order is an immediate order, and if so, the time frame for the Department to seek consent or to file a petition requesting a court order as set out in this subsection; and (5) notice of the anticipated duration of the closure. *Id.*

31. The notice which is required by the IDPHA before a business can be closed is attached herein as Exhibit 4.

32. All of these procedures and standards of the IDPHA required to close a business have been reduced to administrative rules as promulgated in the Administrative Code. (hereinafter referred to as "The Code") (See Exhibit 5)

33. Not only does The Code identify all the due process protections, even when a court order might issue, a business may only be closed for 30 days, and any continuation thereof must be by petition to the court. (See Section G1 and G2 of The Code).

34. If the IDPHA was not clear enough it has supreme authority of business closures, further legislative action in the county code identifies the board of health has been empowered to enforce health and safety measures. (See 55 ILCS 5/5-25001 *et seq.*)

35. The board of health of each county or multiple-county health department shall

   a) Within its jurisdiction, and professional and technical competence, enforce and observe all State laws pertaining to the preservation of health….. See 55 ILCS 5/5-25013 (A)(6).

   b) Within its jurisdiction, and professional and technical competence, investigate the existence of any contagious or infectious disease and adopt measures, not inconsistent with the regulations of the State Department of Public Health… See 55 ILCS 5/5-25013 (A)(7).

36. Even though the local board of health has not taken action in this Court to deem Poopy's place of business a public health risk, he had no choice but to file this cause of action to defend himself in this Honorable Court as Pritzker has been on television threating he may take the business licenses of citizens should they not yield to EO 32.

37. Poopy's fear was even more solidified when he received notice from the Illinois Liquor Control Commission attached as Exhibit 3 as well as phone call from an enforcement officer.

COUNT I
DECLARATORY JUDGMENT
PRITZKER HAS NO AUHORITY TO ORDER THE
CLOSER OF POOPY'S BUSINESS UNDER THE
CONSTITUTION OR THE ACT

38. Plaintiff restates paragraphs 1-37 as if more fully stated herein.

39. In relation to the specific matters raised herein, in order to close Poopy's premises off from the public, Pritzker must have acted under the constitutional powers vested in him as Governor, or under the powers delegated to him under The IEMAA by the legislative branch.

40. Nowhere in EO 32 does Pritzker identify what Constitutional power is vested in him to seize control of Poopy's business and order the premises closed.

41. His suggestion of having constitutional authority is nothing but conclusory.

42. As Governor, he is the supreme executive of the State of Illinois.

43. In that role, he is charged with the faithful execution of the laws of the State and not the making of laws.

44. Seizing control of Poopy's business premises and ordering it closed was a clear utilization of the police powers of the State.

45. Police powers are vested in the sound discretion of the legislative branch of government.

46. As such, Pritzker must find authority to forcibly close Poopy's business premises under the cited sections of the IEMAA, power which would have been delegated to him by the legislative branch, and if he has none, the order of closure of Poopy's business premises would be unlawful and void.

47. Even under the most strained interpretation of Pritzker's cited sections 7(1), 7(2), 7(3), 7(8), 7(9) and 7(12) of The IEMAA, nowhere can it be found where the legislative branch delegated any power to Pritzker to forcibly close private businesses such as Poopy's, let alone without offering any shred of due process of law.

48. Pritzker made it clear EO 32 was not intended to alter or modify any existing State, County or local authority over business closures.  (See Section 19 of EO 32)

49. Poopy does not dispute in times such as these, and at all times for that matter, the Department of Health has the authority to forcibly close the business premises if the place of business is deemed to be a public health risk.

50. The legislative branch in its sound discretion placed the supreme authority over closure of businesses due to public health risks with the Department of Health pursuant to the IDPHA.

51. While Pritzker may desperately attempt to glean some semblance of a shred of delegated authority under his cited sections of EO 32 to close Poopy's business premises, nothing should remotely compel this Court Pritzker's strained and desperate interpretation might in anyway supersede the express supreme authority vested in the Department of Health by the people's lawmaking branch of our government.

52. Should Pritzker successfully convince this Court any provision of IEMAA supersedes the IDPHA, such provision would be void as it violates a fundamental liberty interest and offers no procedural or substantive due process as required by United States & Illinois Constitutions .

53. The supreme authority over matters of closure of businesses due to health risks is quite compelling language the legislature used when granting the Department of Health this extraordinary power over Poopy's fundamental liberties.

54. This authority wielded by the Department of Health is to be enforced by the county board of health consistent with state law.

55. Even though in other executive orders, Pritzker has unlawfully attempted to suspend sections of legislative statutes, he has never attempted to suspend the legislative grant of supreme authority made to the Department of Health regarding business closures.

56. The IDPHA contains significant constitutional procedural and substantive due process rights, which rights includes the right to counsel, and if one cannot afford counsel, one will be appointed. (See statement of rights in Exhibit 5).

57. Pritzker in EO 32 states his actions therein were consistent with public health laws.

58. It is unimaginable how Pritzker can proclaim Poopy's business premises must close due to arbitrarily having been deemed a health risk with no articulable facts, their doors being forcibly closed with absolutely no due process right ever being afforded, all of which was thrust upon them both under the mighty weight and authority of the executive office of this state.

59. Moreover, Pritzker is utilizing the administrative agencies he oversees to intimidate Poopy into complying with EO 32 notwithstanding the local health department has taken no action to deem Poopy's business premises a public health risk.

60. That abuse of executive power is in no way consistent with the significant procedural and substantive due process rights Poopy is expressly afforded under the supreme authority of this state granted by the legislative branch to the IDPHA in regard to the closure of businesses when it might become necessary in the interest of public health.

61. Those procedural and substantive due process rights are guaranteed to Poopy under the United States and Illinois Constitutions.

62. The State Department of Health promulgated an enforcement directive (hereinafter referred to as the "Directive") which was sent to every local board of health on April 25, 2020. (See attached Exhibit 6)

63. The Directive is signed by current IDPH Director Dr. Ngozi Ezike.

64. The Directive states it would apply to all subsequent executive orders until the State of Illinois no longer has a disaster proclamation related to COVID-19. (See 2nd to last paragraph of Exhibit 6)

65. By its express terms it applies to EO 32.

66. The last paragraph of Exhibit G clearly defines the process by which an order could be obtained to close Poopy's premises if he did not adhere to the Executive Orders. ( See last paragraph of Exhibit 6)

67. The Directive accurately states the correct statutory procedure to seek an order closing Poopy's is found in 20 ILCS 2305/2(c). ( See last paragraph of Exhibit 6)

68. The procedural and substantive requirements of 20 ILCS 2305/2(c) have been reduced to The Rules as outlined in Exhibit 5.

69. The Rules are required to be followed to obtain an order of closure of a facility, which standard form order is attached hereto as Exhibit 4.

70. Poopy had an absolute right that if the business was to be forcibly closed against their will that it be done only within the confines of the statutory scheme unequivocally delegated by the people's representatives of the legislature to the Department of Health, and they be afforded the procedural and substantive due process the IDPA provides, all as clearly explained in the attached Directive, Rules and Order.

71. An actual controversy exists between the parties in regard to the authority of Pritzker to issue and enforce that part of EO 32 which shuttered Poopy's business premises against their will and without due process.

72. An immediate and definitive determination is necessary to clarify the rights and interests of the parties.

WHEREFORE, Plaintiff, Kevin and Peggy Promenschenkel, herein request that this court enter an Order:

A. Entering an order finding Pritzker issued EO 32 on April 30, 2020;

B.     Enter an order declaring Pritzker had no constitutional authority as Governor to forcibly close Kevin and Peggy Promenschenkel's business;

C.     Entering an order declaring that none of the cited provisions of the IEMAA in EO 32 delegated Pritzker any authority to order the closure of Kevin and Peggy Promenschenkel's business;

D.     Enter an order declaring the proper mechanism for closure of Kevin and Peggy Promenschenkel's business premises due to any public health risks has been expressly delegated to the Department of Health under the Illinois Department of Public Health Act;

E.     Enter an order declaring that to the extent any provision of the IEMAA allowed Pritzker to forcibly close Kevin and Peggy Promenschenkel's business premises, it does not supercede the Illinois Department of Public Health Act;

F.     Enter an order declaring that to the extent any provision of the IEMAA allowed Pritzker to forcibly close Kevin and Peggy Promenschenkel's business premises, such provision of EO 32 is void as it violates a fundamental right without due process as required by the United States and Illinois Constitutions;

G.     Awarding Kevin and Peggy Promenschenkel their costs incurred in this matter as may be allowed by law;

H.     That the Court grant such other and further relief as is just and proper.

COUNT II
REQUEST FOR INJUNCTION

73. Plaintiff restates paragraphs 1-72 as if more fully stated herein.

74. Poopy has a right to insist EO 32, to the extent it attempts to forcibly close the business, strictly comport to any constitutional or statutory authority residing with Pritzker.

75. Poopy is being irreparably harmed each and every day in which they continue to be unable to engage in their business free of any public health restrictions found in EO 32, in that they continues to lose business income and at the same time continues to incur the expenses of keeping the business open such as insurance, utilities and the like.

76. In addition, each and every day Poopys's liberty interests and property rights are arbitrarily infringed by the State, without due process of law, causes irreparable harm for which there is no adequate remedy at law.

77. Poopy has no adequate remedy at law to prohibit Pritzker from enforcing EO 32 against them absent an injunction from This Court ordering the same.

78. There is a reasonably likelihood of success on the merits for the following reasons:

   a)  Pritzker has no constitutional authority to forcible close Poopy's business;

   b)  Pritzker has no authority under the IEMAA to forcible close Poopy's business;

   c)  IDPHA is the supreme authority in the matters of business closure and at no time did this administrative agency seek an order of closure of Poopy's business due to any health risk.

WHEREFORE, Plaintiff, Kevin and Peggy Promenschenkel, prays that this Court enter judgment in his favor and finds and declares that:

   A.  Finding the Kevin and Peggy Promenschenkel have a right to insist Pritzker's EO 32 forcibly closing his business was supported by constitutional or statutory authority.

   B.  Finding Kevin Promenschenkel and Peggy are irreparably harmed each day they are not allowed to fully open their business premises to earn a living and pay his expenses.

   C.  Finding Kevin and Peggy Promenschenkel have no adequate remedy at law to

protect their rights against this unlawful order of Pritzker beyond injunctive relief.

D.    Finding Kevin and Peggy Promenschenkel have a likelihood of success on the merits as Pritzker forcibly closed their business without any grant of legal authority.

E.    Enter an injunction permanently enjoining EO 32, or any substantively similar executive order issued by Pritzker, from being legally enforced directly by Pritzker, or indirectly by any licensing agency under his control, demanding Kevin and Peggy Promenschenkel forcibly close their business premises.

F.    For such other relief as this Court deems just and proper.

THIS CASE IS SET FOR PROGRESS CALL
BEFORE JUDGE Gunnarsson
ON Monday THE 10 DAY OF
August 20 20

ALL PARTIES OR THEIR COUNSEL ARE TO BE
PRESENT BEFORE THE COURT AT THIS PROGRESS
CALL AT 1:15p M FAILURE TO
APPEAR MAY RESULT IN DISMISSAL OR
DEFAULT.
CLERK OF THE CIRCUIT COURT

Respectfully submitted,

By:    /s/ Thomas Devore
Thomas G. DeVore
IL Bar Reg. No. 6305737
**DeVore Law Offices, LLC**
Attorneys for Plaintiff
118 N. 2nd St.
Greenville, IL 62246
Telephone - 618-664-9439
tom@silverlakelaw.com

/s/ Erik Hyam
Erik Hyam
IL Bar No. 6311090
**DeVore Law Offices, LLC**
Attorneys for Plaintiff
118 N. Second Street
Greenville, IL 62246
Tel. (618) 664.9439
Fax (618) 664.9486
erik@silverlakelaw.com

## VERIFICATION

Under penalties of perjury as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct except as to matters therein stated to be on information and belief, if any, and as to such matters the undersigned certifies as aforesaid that the undersigned verily believes the same to be true.

Date: _5 · 10_ , 2020      By: _____

                                 Kevin Promenschenkel


## VERIFICATION

Under penalties of perjury as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct except as to matters therein stated to be on information and belief, if any, and as to such matters the undersigned certifies as aforesaid that the undersigned verily believes the same to be true.

Date: _5 - 10_ , 2020      By: _____

                                   Peggy Promenschenkel

**Signature:**

**Email:** psfreedom2009@yahoo.com



# Gubernatorial Disaster Proclamation

**WHEREAS,** protecting the health and safety of Illinoisans is among the most important functions of State government; and,

**WHEREAS,** it is critical that Illinoisans who become sick are able to be treated by medical professionals, including when a hospital bed, emergency room bed, or ventilator is needed; and,

**WHEREAS,** it is also critical that the State's health care and first responder workforce has adequate personal protective equipment (PPE) to safely treat patients, respond to public health disasters, and prevent the spread of communicable diseases; and,

**WHEREAS,** Coronavirus Disease 2019 (COVID-19) is a novel severe acute respiratory illness that has spread among people through respiratory transmissions, the World Health Organization declared COVID-19 a Public Health Emergency of International Concern on January 30, 2020, and the United States Secretary of Health and Human Services declared that COVID-19 presents a public health emergency on January 27, 2020; and,

**WHEREAS,** on March 11, 2020, the World Health Organization characterized the COVID-19 outbreak as a pandemic, and has reported more than 3 million confirmed cases of COVID-19 and 200,000 deaths attributable to COVID-19 globally as of April 30, 2020; and,

**WHEREAS,** a vaccine or treatment is not currently available for COVID-19 and, on April 24, 2020, the World Health Organization warned that there is currently no evidence that people who have recovered from COVID-19 and have antibodies are protected from a second infection; and,

**WHEREAS,** despite efforts to contain COVID-19, the World Health Organization and the federal Centers for Disease Control and Prevention (CDC) indicated that the virus was expected to continue spreading and it has, in fact, continued to spread rapidly, resulting in the need for federal and State governments to take significant steps; and,

**WHEREAS,** on March 9, 2020, I, JB Pritzker, Governor of Illinois, declared all counties in the State of Illinois as a disaster area in response to the outbreak of COVID-19 (First Gubernatorial Disaster Proclamation); and,

**WHEREAS,** on March 13, 2020, the President declared a nationwide emergency pursuant to Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. 5121-5207 (the "Stafford Act"), covering all states and territories, including Illinois; and,

**WHEREAS,** on March 26, 2020, the President declared a major disaster in Illinois pursuant to Section 401 of the Stafford Act; and,

**WHEREAS,** on April 1, 2020, due to the exponential spread of COVID-19 in Illinois, I again declared all counties in the State of Illinois as a disaster area (Second Gubernatorial Disaster Proclamation); and,



**EXHIBIT**

1

WHEREAS, as circumstances surrounding COVID-19 rapidly evolve, there have been frequent changes in information and guidance from public health officials as a result of emerging evidence; and,

WHEREAS, from the outset, data suggested that older adults and those with serious underlying health conditions are more likely to experience severe and sometimes fatal complications from COVID-19; and,

WHEREAS, emerging evidence has shown that young people, including infants and toddlers, are also at risk for such complications; and,

WHEREAS, as of March 16, 2020, an analysis by the CDC showed that 38 percent of hospitalized COVID-19 patients were between the ages of 20 and 54, and there is evidence that COVID-19 causes blood clots and strokes, and has caused deadly strokes in young and middle-aged patients who exhibited few symptoms; and,

WHEREAS, the understanding on spread from infected individuals who have not shown symptoms has changed and, on April 12, 2020, the CDC changed the period of exposure risk from "onset of symptoms" to "48 hours before symptom onset"; and,

WHEREAS, previously, the CDC recommended against wearing cloth face coverings or masks as protection and, now, in light of new research on asymptomatic and pre-symptomatic transmission, the CDC now recommends wearing cloth face coverings in public settings where social distancing measures are difficult to maintain; and,

WHEREAS, as COVID-19 has spread in Illinois over the course of the Gubernatorial Disaster Proclamations, the circumstances causing a disaster throughout the State have changed; and,

WHEREAS, at the time I issued the First Gubernatorial Disaster Proclamation, there were 11 confirmed cases of COVID-19 in one Illinois county; and,

WHEREAS, as of today, April 30, 2020, there have been nearly 53,000 confirmed cases of COVID-19 in 97 Illinois counties; and,

WHEREAS, the first death attributed to COVID-19 in Illinois was announced on March 17, 2020; and,

WHEREAS, as of April 30, 2020, Illinois has had more than 2,350 deaths resulting from COVID-19, including 141 deaths reported over a 24-hour period on April 30; and,

WHEREAS, studies suggest that for every confirmed case there are many more unknown cases, some of which are asymptomatic individuals, meaning that individuals can pass the virus to others without knowing; and,

WHEREAS, the Illinois Department of Public Health activated its Illinois Emergency Operations Plan and its Emergency Support Function 8 Plan to coordinate emergency response efforts by hospitals, local health departments, and emergency management systems in order to avoid a surge hospital resources and capacity; and,

WHEREAS, as the virus has progressed through Illinois, the crisis facing the State has developed and now requires an evolving response to ensure hospitals, health care professionals and first responders are able to meet the health care needs of all Illinoisans and in a manner consistent with CDC guidance that continues to be updated; and,

WHEREAS, in order to ensure that health care professionals, first responders, hospitals and other facilities are able to meet the health care needs of all residents of Illinois, the State must have critical supplies, including PPE, such as masks, face shields, gowns, and gloves; and,

WHEREAS, the State of Illinois maintains a stockpile that supports the existing PPE supply chains and stocks at various healthcare facilities; and,

WHEREAS, across the State, hospitals and long-term care facilities use approximately 1.5 million N95 masks, 25 million gloves, 4.4 million gowns, and 700,000 surgical masks during a 10-day period; and,

WHEREAS, the State had distributed among all 102 Illinois counties millions of surgical masks and N95 masks, tens of thousands of gowns, millions of pairs of gloves, and hundreds of thousands of face shields from the State stockpile; and,

WHEREAS, the Illinois Department of Public Health has provided guidance to all hospitals and EMS providers recommending the immediate elevation of their conservation and contingency strategies as it relates to PPE; and,

WHEREAS, while the State is making every effort to procure additional PPE, if those procurement efforts are disrupted or Illinois experiences a surge in COVID-19 cases, the State faces a life-threatening shortage of respirators, masks, protective eyewear, face shields, gloves, gowns, and other protective equipment for health care workers and first responders; and,

WHEREAS, Illinois is using a high percentage of hospital beds, ICU beds, and ventilators as a result of the number of COVID-19 patients that require hospitalization and, if cases were to surge higher, the State would face a shortage of these critical health care resources; and,

WHEREAS, Illinois currently has a total of 32,010 hospital beds with 3,631 ICU beds, of which, as of April 30, 2020, only 33% of hospital beds and 25% of ICU beds were available statewide, and only 17% of ICU beds were available in the Chicago region; and,

WHEREAS, the State worked with top researchers from the University of Illinois at Urbana-Champaign, the Northwestern School of Medicine, the University of Chicago, the Chicago and Illinois Departments of Public Health, along with McKinsey and Mier Consulting Group, and Civis Analytics, to analyze two months' worth of daily data on COVID-19 deaths and ICU usage and model potential outcomes; and,

WHEREAS, the State's modeling shows that its health care resource utilization will not peak until May, and that health care resources will continue to be limited after the peak; and,

WHEREAS, the State's modeling shows that without extensive social distancing and other precautions, the State will not have sufficient hospital beds, ICU beds or ventilators; and,

WHEREAS, Illinois currently has a total of 32,010 hospital beds, and the State's modeling shows that without a "stay at home" order, more than 100,000 hospital beds would be necessary; and,

WHEREAS, Illinois currently has a total of 3,631 ICU beds, and the State's modeling shows that without a "stay at home" order, more than 25,000 ICU beds would be necessary; and,

WHEREAS, Illinois currently has a total of 3,378 ventilators, and the State's modeling shows that without a "stay at home" order, upwards of 20,000 ventilators would be necessary; and,

WHEREAS, the State's modeling shows that without a "stay at home" order, the number of deaths from COVID-19 would be between 10 to 20 times higher than with a "stay at home" order in place; and,

WHEREAS, the epidemiology concept of $R_0$ (R-naught) – which represents the number of cases, on average, an infected person will cause during their infectious period – is an important measure of progress in combating a virus like COVID-19, and that an $R_0$ of below 1 is a critical milestone because it suggests that the disease is declining rather than spreading; and,

WHEREAS, the State's estimated effective $R_0$ was approximately 3.5 at the beginning of the outbreak, but the number has improved to approximately 1.25 based on the State's emergency measures, including the "stay at home" order; and,

WHEREAS, hospital beds, ICU beds, and ventilators are needed not for just patients with COVID-19, but also for any number of additional illnesses and injuries; and,

WHEREAS, fewer Illinoisans have sought non-COVID-19 related medical care and emergency care in recent weeks and it is critical that Illinoisans are able to and willing to seek non-COVID-19 related medical care and emergency care; and,

WHEREAS, Illinoisans will be able to and willing to seek non-COVID-19 related medical care and emergency care if there are sufficient hospital beds, ventilators, and if medical personnel are able to protect themselves with PPE; and,

WHEREAS, the State has been limited in the number of COVID-19 tests that can be taken and processed due to a limited number of testing sites and labs, as well as a shortage of necessary supplies, including the swabs needed to take samples; and,

WHEREAS, at the time I issued the First Gubernatorial Disaster Proclamation, Illinois had capacity to test no more than a few hundred people per day for COVID-19 at a small number of testing sites; and,

WHEREAS, the State has developed testing sites throughout the State and now has increased the COVID-19 tests per day to more than 10,000; and,

WHEREAS, as of April 30, 2020, Illinois has tested nearly 270,000 total specimens for COVID-19; and,

WHEREAS, national projections adjusted for Illinois' population suggest the state may need to process several thousand more tests per day as part of the effort to permanently slow and reduce the spread of COVID-19; and,

WHEREAS, the World Health Organization has identified a positive test rate of 10% as a benchmark for adequate testing but currently over 20% of the COVID-19 tests administered in Illinois have positive results, suggesting that Illinois must continue increasing testing; and,

WHEREAS, based on the foregoing facts, and considering the expected continuing spread of COVID-19 and the resulting health impacts that will be felt over the coming month by people across the State, the current circumstances in Illinois surrounding the spread of COVID-19 constitute an epidemic emergency and a public health emergency under Section 4 of the Illinois Emergency Management Agency Act; and,

WHEREAS, based on the foregoing, the new circumstances surrounding the threatened shortages of hospital beds, ICU beds, ventilators, and PPE, and critical need for increased COVID-19 testing capacity constitute a public health emergency under Section 4 of the Illinois Emergency Management Agency Act; and,

WHEREAS, it is the policy of the State of Illinois that the State will be prepared to address any disasters and, therefore, it is necessary and appropriate to make additional State resources available to ensure that that our healthcare delivery system is capable of serving those who are sick and that Illinoisans remain safe and secure and able to obtain medical care; and,

WHEREAS, this proclamation will assist Illinois agencies in coordinating State and Federal resources, including materials needed to test for COVID-19, personal protective equipment, and medicines, in an effort to support the State responses as well as the responses of local governments to the present public health emergency; and,

WHEREAS, these conditions provide legal justification under Section 7 of the Illinois Emergency Management Agency Act for the new issuance of a proclamation of disaster; and,

WHEREAS, the Illinois Constitution, in Article V, Section 8, provides that "the Governor shall have the supreme executive power, and shall be responsible for the faithful execution of the laws," and states, in the Preamble, that a central purpose of the Illinois Constitution is "provide for the health, safety, and welfare of the people";

NOW, THEREFORE, in the interest of aiding the people of Illinois and the local governments responsible for ensuring public health and safety, I, JB Pritzker, Governor of the State of Illinois, hereby proclaim as follows:

**Section 1.** Pursuant to the provisions of Section 7 of the Illinois Emergency Management Agency Act, 20 ILCS 3305/7, I find that a disaster exists within the State of Illinois and specifically declare all counties in the State of Illinois as a disaster area. The proclamation authorizes the exercise of all of the emergency powers provided in Section 7 of the Illinois Emergency Management Agency Act, 20 ILCS 3305/7, including but not limited to those specific emergency powers set forth below.

**Section 2.** The Illinois Department of Public Health and the Illinois Emergency Management Agency are directed to coordinate with each other with respect to planning for and responding to the present public health emergency.

**Section 3.** The Illinois Department of Public Health is further directed to cooperate with the Governor, other State agencies and local authorities, including local public health authorities, in the development and implementation of strategies and plans to protect the public health in connection with the present public health emergency.

**Section 4.** The Illinois Emergency Management Agency is directed to implement the State Emergency Operations Plan to coordinate State resources to support local governments in disaster response and recovery operations.

**Section 5.** To aid with emergency purchases necessary for response and other emergency powers as authorized by the Illinois Emergency Management Agency Act, the provisions of the Illinois Procurement Code that would in any way prevent, hinder or delay necessary action in coping with the disaster are suspended to the extent they are not required by federal law. If necessary, and in accordance with Section 7(1) of the Illinois Emergency Management Agency Act, 20 ILCS 3305/7(1), the Governor may take appropriate executive action to suspend additional statutes, orders, rules, and regulations.

**Section 6.** Pursuant to Section 7(3) of the Illinois Emergency Management Agency Act, 20 ILCS 3305/7(3), this proclamation activates the Governor's authority, as necessary, to transfer the direction, personnel or functions of State departments and agencies or units thereof for the purpose of performing or facilitating emergency response programs.

**Section 7.** The Illinois Department of Public Health, Illinois Department of Insurance and the Illinois Department of Healthcare and Family Services are directed to recommend, and, as appropriate, take necessary actions to ensure expanded access to testing for COVID-19 and that consumers do not face financial barriers in accessing diagnostic testing and treatment services for COVID-19.

**Section 8.** The Illinois State Board of Education is directed to recommend, and, as appropriate, take necessary actions to address any impact to learning associated with the present public health emergency and to alleviate any barriers to the use of remote learning during the effect of this proclamation that exist in the Illinois School Code, 105 ILCS 5/1-1 et. seq.

**Section 9.** All State agencies are directed to cooperate with the Governor, other State agencies and local authorities in the development and implementation of strategies and plans to cope with and recover from the economic impact of the present public health emergency.

**Section 10.** Pursuant to Section 7(14) of the Illinois Emergency Management Agency Act, 20 ILCS 3305/7(14), increases in the selling price of goods or services, including medical supplies, protective equipment, medications and other commodities intended to assist in the prevention of or treatment and recovery of COVID-19, shall be prohibited in the State of Illinois while this proclamation is in effect.

**Section 11.** This proclamation can facilitate requests for federal emergency and/or disaster assistance if a complete and comprehensive assessment of damage indicates that effective recovery is beyond the capabilities of the State and affected local governments.

Section 12. This proclamation shall be effective immediately and remain in effect for 30 days.

*In Witness Whereof, I have hereunto set my hand and caused the Great Seal of the State of Illinois to be affixed.*

*Done at the Capitol in the City of Springfield this 30th day of April, in the Year of Our Lord two thousand and twenty, and of the State of Illinois two hundred and second.*



SECRETARY OF STATE

GOVERNOR

➕ View up to date information on how Illinois is handling the Coronavirus Disease 2019 (COVID-19) from the State of Illinois Coronavirus Response Site (https://coronavirus.illinois.gov/)          ✖

Illinois.gov (/)                                                                      ⌔ SHARE

# Executive Order 2020-32

April 30, 2020
Executive Order 2020-32

### EXECUTIVE ORDER 2020-32
### (COVID-19 EXECUTIVE ORDER NO. 30)

**WHEREAS**, protecting the health and safety of Illinoisans is among the most important functions of State government; and,

**WHEREAS**, it is critical that Illinoisans who become sick are able to be treated by medical professionals, including when a hospital bed, emergency room bed, or ventilator is needed; and,

**WHEREAS**, it is also critical that the State's health care and first responder workforce has adequate personal protective equipment (PPE) to safely treat patients, respond to public health disasters, and prevent the spread of communicable diseases; and,

**WHEREAS**, Coronavirus Disease 2019 (COVID-19) is a novel severe acute respiratory illness that has spread among people through respiratory transmissions, the World Health Organization declared COVID-19 a Public Health Emergency of International Concern on January 30, 2020, and the United States Secretary of Health and Human Services declared that COVID-19 presents a public health emergency on January 27, 2020; and,

**WHEREAS**, on March 11, 2020, the World Health Organization characterized the COVID-19 outbreak as a pandemic, and has reported more than 3 million confirmed cases of COVID-19 and 200,000 deaths attributable to COVID-19 globally as of April 30, 2020; and,

**WHEREAS**, a vaccine or treatment is not currently available for COVID-19 and, on April 24, 2020, the World Health Organization warned that there is currently no evidence that people who have recovered from COVID-19 and have antibodies are protected from a second infection; and,

**WHEREAS**, despite efforts to contain COVID-19, the World Health Organization and the federal Centers for Disease Control and Prevention (CDC) indicated that the virus was expected to continue spreading and it has, in fact, continued to spread rapidly, resulting in the need for federal and State governments to take significant steps; and,

**WHEREAS**, the CDC currently recommends that all United States residents take precautions to contain the spread of COVID-19, including that they: (1) stay home as much as possible; (2) if they must leave their home, practice social distancing by maintaining 6 feet of distance from others and avoiding all gatherings; (3) wear cloth face coverings in public settings where other social distancing measures are difficult to maintain; (4) be alert for symptoms such as fever, cough, or shortness of breath, and take their temperature if symptoms develop; and (5) exercise appropriate hygiene, including proper hand-washing; and,

**WHEREAS**, the CDC also recommends the following precautions for household members, caretakers and other persons having close contact with a person with symptomatic COVID-19, during the period from 48 hours before onset of symptoms until the symptomatic person meets the criteria for discontinuing home isolation: (1) stay home until 14 days after last exposure and maintain social distance (at least 6 feet) from others at all times; (2) self-monitor for symptoms, including checking their temperature twice a day and watching for fever, cough, or shortness of breath; and (3) avoid contact with people at higher risk for severe illness (unless they live in the same home and had the same exposure); and,

**WHEREAS**, as circumstances surrounding COVID-19 rapidly evolve, there have been frequent changes in information and guidance from public health officials as a result of emerging evidence; and,

**WHEREAS**, as of April 30, 2020, there have been nearly 53,000 confirmed cases of COVID-19 in 97 Illinois counties and 2,350 deaths from COVID-19; and,

**GOVERNMENT (/GOVERNMENT)**

Executive Branch (/government/executive-branch)

Executive Orders (/government/executive-orders)

Judicial Branch (/government/judicial-branch)

Legislative Branch (/government/legislative-branch)

Resources & Records (/government/resources-records)

Transparency & Accountability (/government/transparency-accountability)

**BUSINESS (/BUSINESS)**

Consumers (/business/consumers)

Manage your Business (/business/manage-your-business)

Manage your Employees (/business/manage-your-employees)

Registration, Licenses, & Permits (/business/registration-licenses-permits)

**EMPLOYMENT (/EMPLOYMENT)**

Employee Rights (/employment/employee-rights)

Find Jobs (/employment/find-jobs)

Professional Licenses

Educators



EXHIBIT
2

WHEREAS, studies suggest that for every confirmed case there are many more unknown cases, some of which are asymptomatic individuals, meaning that individuals can pass the virus to others without knowing; and,

WHEREAS, as the virus has progressed through Illinois, the crisis facing the State has developed and now requires an evolving response to ensure hospitals, health care professionals and first responders are able to meet the health care needs of all Illinoisans and in a manner consistent with CDC guidance that continues to be updated; and,

WHEREAS, Illinois is using a high percentage of hospital beds, ICU beds, and ventilators as a result of the number of COVID-19 patients that require hospitalization and, if cases were to surge higher, the State would face a shortage of these critical health care resources; and,

WHEREAS, Illinois currently has a total of 32,010 hospital beds with 3,631 ICU beds, of which, as of April 30, 2020, only 33% of hospital beds and 25% of ICU beds were available statewide, and only 17% of ICU beds were available in the Chicago region; and,

WHEREAS, the State worked with top researchers from the University of Illinois at Urbana-Champaign, the Northwestern School of Medicine, the University of Chicago, the Chicago and Illinois Departments of Public Health, along with McKinsey and Mier Consulting Group, and Civis Analytics, to analyze two months' worth of daily data on COVID-19 deaths and ICU usage and model potential outcomes; and,

WHEREAS, the State's modeling shows that its health care resource utilization will not peak until May, and that health care resources will continue to be limited after the peak; and,

WHEREAS, the State's modeling shows that without extensive social distancing and other precautions, the State will not have sufficient hospital beds, ICU beds or ventilators; and,

WHEREAS, Illinois currently has a total of 32,010 hospital beds, and the State's modeling shows that without a "stay at home" order, more than 100,000 hospital beds would be necessary; and,

WHEREAS, Illinois currently has a total of 3,631 ICU beds, and the State's modeling shows that without a "stay at home" order, more than 25,000 ICU beds would be necessary; and,

WHEREAS, Illinois currently has a total of 3,376 ventilators, and the State's modeling shows that without a "stay at home" order, upwards of 20,000 ventilators would be necessary; and,

WHEREAS, the State's modeling shows that without a "stay at home" order, the number of deaths from COVID-19 would be between 10 to 20 times higher than with a "stay at home" order in place; and,

WHEREAS, I declared all counties in the State of Illinois as a disaster area on April 30, 2020 because the current circumstances in Illinois surrounding the spread of COVID-19 constitute an epidemic and a public health emergency under Section 4 of the Illinois Emergency Management Agency Act; and,

WHEREAS, I declared all counties in the State of Illinois as a disaster area on April 30, 2020 because the current circumstances surrounding the threatened shortages of hospital beds, ICU beds, ventilators, and PPE, and critical need for increased COVID-19 testing capacity constitute a public health emergency under Section 4 of the Illinois Emergency Management Agency Act; and,

WHEREAS, the Illinois Constitution, in Article V, Section 8, provides that "the Governor shall have the supreme executive power, and shall be responsible for the faithful execution of the laws," and states, in the Preamble, that a central purpose of the Illinois Constitution is "provide for the health, safety, and welfare of the people;" and,

WHEREAS, for the preservation of public health and safety throughout the entire State of Illinois, and to ensure that our healthcare delivery system is capable of serving those who are sick, I find it necessary to take measures consistent with public health guidance to slow and stop the spread of COVID-19 and to prevent shortages of hospital beds, ICU beds, ventilators, and PPE and to increase COVID-19 testing capacity;

THEREFORE, by the powers vested in me as the Governor of the State of Illinois, pursuant to the Illinois Constitution and Sections 7(1), 7(2), 7(3), 7(8), 7(9), and 7(12) of the Illinois Emergency Management Agency Act, 20 ILCS 3305, and consistent with the powers in public health laws, I hereby order the following, effective May 1, 2020:

**Section 1. Public Health Requirements for Individuals Leaving Home and for Businesses**

1. <u>Wearing a face covering in public places or when working</u>. Any individual who is over age two and able to medically tolerate a face-covering (a mask or cloth face-covering) shall be required to cover their nose and mouth with a face-covering when in a public place and unable to maintain a six-foot social distance. Face-coverings are

(/education/educators)

Learning Resources (/education/learning-resources)

Parents (/education/parents)

Students (/education/students)

RESIDENTS (/RESIDENTS)

Cars & Transportation (/residents/cars-transportation)

Citizen Resources (/residents/citizen-resources)

Family & Home (/residents/family-home)

Health & Safety (/residents/health-safety)

Neighborhoods/Housing (/residents/neighborhoods-housing)

Parent/Child Resources (/residents/parent-child-resources)

Senior Citizen Resources (/residents/senior-citizen-resources)

Veteran Resources (/residents/veteran-resources)

VISITING (/VISITING)

Arts and Culture (/visiting/arts-and-culture)

Family Attractions (/visiting/family-attractions)

Museums (/visiting/museums)

Outdoors (/visiting/outdoors)

Travel & Recreation (/visiting/travel-recreation)

ABOUT (/ABOUT)

History (/about/history)

State Information (/about/state-information)

EMAIL UPDATES (/PAGES/COMMUNICATIONSOPT

SEARCH (/SEARCH)

News (/search/news)

AGENCIES (/AGENCIES)

SERVICES (/SERVICES)

NEWS (/NEWS)

Release (/news/release)

required in public indoor spaces such as stores.

2. <u>Requirements for essential stores.</u> Retail stores (including, but not limited to, stores that sell groceries and medicine, hardware stores, and greenhouses, garden centers, and nurseries) designated as Essential Businesses and Operations under this Order shall to the greatest extent possible:
   - provide face coverings to all employees who are not able to maintain a minimum six-foot social distance at all times;
   - cap occupancy at 50 percent of store capacity, or, alternatively, at the occupancy limits based on store square footage set by the Department of Commerce and Economic Opportunity;
   - set up store aisles to be one-way where practicable to maximize spacing between customers and identify the one-way aisles with conspicuous signage and/or floor markings;
   - communicate with customers through in-store signage, and public service announcements and advertisements, about the social distancing requirements set forth in this Order (Social Distancing Requirements); and
   - discontinue use of reusable bags.
   
   Households must limit the number of members who enter stores to the minimum necessary.

3. <u>Requirements for non-essential stores.</u> Retail stores not designated as Essential Businesses and Operations may re-open for the limited purposes of fulfilling telephone and online orders through pick-up outside the store and delivery -- which are deemed to be Minimum Basic Operations. Employees working in the store must follow the social Distancing Requirements, and must wear a face covering when they may come within six feet of another employee or a customer.

4. <u>Requirements for manufacturers.</u> Manufacturers that continue to operate pursuant to this Order must follow Social Distancing Requirements and take appropriate precautions, which may include:
   - providing face coverings to all employees who are not able to maintain a minimum six-foot social distance at all times;
   - staggering shifts;
   - reducing line speeds;
   - operating only essential lines, while shutting down non-essential lines;
   - ensuring that all spaces where employees may gather, including locker rooms and lunchrooms, allow for social distancing; and
   - downsizing operations to the extent necessary to allow for social distancing and to provide a safe workplace in response to the COVID-19 emergency.

5. <u>Requirements for all businesses.</u> All businesses must evaluate which employees are able to work from home, and are encouraged to facilitate remote work from home when possible. All businesses that have employees physically reporting to a work-site must post the guidance from the Illinois Department of Public Health (IDPH) and Office of the Illinois Attorney General regarding workplace safety during the COVID-19 emergency. The guidance will be posted on the IDPH webpage.

Section 2. Stay at Home; Social Distancing Requirements; and Essential Businesses and Operations

1. <u>Stay at home or place of residence.</u> With exceptions as outlined below, all individuals currently living within the State of Illinois are ordered to stay at home or at their place of residence except as allowed in this Executive Order. To the extent individuals are using shared or outdoor spaces when outside their residence, they must at all times and as much as reasonably possible maintain social distancing of at least six feet from any other person, consistent with the Social Distancing Requirements set forth in this Executive Order. All persons may leave their homes or place of residence only for Essential Activities, Essential Governmental Functions, or to operate Essential Businesses and Operations, all as defined below.

   Individuals experiencing homelessness are exempt from this directive, but are strongly urged to obtain shelter, and governmental and other entities are strongly urged to make such shelter available as soon as possible and to the maximum extent practicable (and to use in their operation COVID-19 risk mitigation practices recommended by the U.S. Centers for Disease Control and Prevention (CDC) and the Illinois Department of Public Health (IDPH)). Individuals whose residences are unsafe or become unsafe, such as victims of domestic violence, are permitted and urged to leave their home and stay at a safe alternative location. For purposes of this Executive Order, homes or residences include hotels, motels, shared rental units, shelters, and similar facilities.

2. <u>Non-essential business and operations must cease.</u> All businesses and operations in the State, except Essential Businesses and Operations as defined below, are required to cease all activities within the State except Minimum Basic Operations, as defined below. For clarity, businesses may also continue operations consisting exclusively of employees or contractors performing activities at their own residences (i.e., working from home).

071

All Essential Businesses and Operations may remain open consistent with the express provisions of this Order and the intent of this Order as set forth in Section 2, Paragraph 16 below. To the greatest extent feasible, Essential Businesses and Operations shall comply with Social Distancing Requirements as defined in this Executive Order, including by maintaining six-foot social distancing for both employees and members of the public at all times, including, but not limited to, when any customers are standing in line.

3. <u>Prohibited activities.</u> All public and private gatherings of any number of people occurring outside a single household or living unit are prohibited, except for the limited purposes permitted by this Executive Order. Pursuant to current guidance from the CDC, any gathering of more than ten people is prohibited unless exempted by this Executive Order. Nothing in this Executive Order prohibits the gathering of members of a household or residence.

   All places of public amusement, whether indoors or outdoors, including but not limited to, locations with amusement rides, carnivals, amusement parks, water parks, aquariums, zoos, museums, arcades, fairs, children's play centers, playgrounds, funplexes, theme parks, bowling alleys, movie and other theaters, concert and music halls, and country clubs or social clubs shall be closed to the public.

4. <u>Prohibited and permitted travel.</u> All travel, including, but not limited to, travel by automobile, motorcycle, scooter, bicycle, train, plane, or public transit, except Essential Travel and Essential Activities as defined herein, is prohibited. People riding on public transit must comply with Social Distancing Requirements to the greatest extent feasible. This Executive Order allows travel into or out of the State to maintain Essential Businesses and Operations and Minimum Basic Operations.

5. <u>Leaving the home for essential activities is permitted.</u> For purposes of this Executive Order, individuals may leave their residence only to perform any of the following Essential Activities, and must follow the Social Distancing Requirements set forth in this Order, including wearing face coverings when in public or at work:

   i. <u>For health and safety.</u> To engage in activities or perform tasks essential to their health and safety, or to the health and safety of their family or household members (including, but not limited to, pets), such as, by way of example only and without limitation, seeking emergency services, obtaining medical supplies or medication, or visiting a health care professional.

   ii. <u>For necessary supplies and services.</u> To obtain necessary services or supplies for themselves and their family or household members, or to deliver those services or supplies to others, such as, by way of example only and without limitation, groceries and food, household consumer products, supplies they need to work from home, and products necessary to maintain the safety, sanitation, and essential operation of residences.

   iii. <u>For outdoor activity.</u> To engage in outdoor activity, provided the individuals comply with Social Distancing Requirements, as defined below, such as, by way of example and without limitation, walking, hiking, running, and biking. Individuals may go to public parks and open outdoor recreation areas, including specific State parks that remain open for certain activities, as designated by the Illinois Department of Natural Resources. Fishing, boating, and golf are permitted only when following the guidelines provided by the Illinois Department of Commerce and Economic Opportunity (DCEO). Playgrounds may increase spread of COVID-19, and therefore shall be closed.

   iv. <u>For certain types of work.</u> To perform work providing essential products and services at Essential Businesses or Operations (which, as defined below, includes Healthcare and Public Health Operations, Human Services Operations, Essential Governmental Functions, and Essential Infrastructure) or to otherwise carry out activities specifically permitted in this Executive Order, including Minimum Basic Operations.

   v. <u>To take care of others.</u> To care for a family member, friend, or pet in another household, and to transport family members, friends, or pets as allowed by this Executive Order.

   vi. <u>To engage in the free exercise of religion.</u> To engage in the free exercise of religion, provided that such exercise must comply with Social Distancing Requirements and the limit on gatherings of more than ten people in keeping with CDC guidelines for the protection of public health. Religious organizations and houses of worship are encouraged to use online or drive-in services to protect the health and safety of their congregants.

6. <u>Elderly people and those who are vulnerable as a result of illness should take additional precautions.</u> People at high risk of severe illness from COVID-19, including elderly people and those who are sick, are urged to stay in their residence to the extent possible except as necessary to seek medical care. Nothing in this Executive Order prevents the Illinois Department of Public Health or local public health departments from issuing and enforcing isolation and quarantine orders pursuant to the Department of Public Health Act, 20 ILCS 2305.

072

7. <u>Healthcare and Public Health Operations</u>. For purposes of this Executive Order, individuals may leave their residence to work for or obtain services through Healthcare and Public Health Operations.
Healthcare and Public Health Operations includes, but is not limited to: hospitals; clinics; dental offices; pharmacies; public health entities, including those that compile, model, analyze and communicate public health information; pharmaceutical, pharmacy, medical device and equipment, and biotechnology companies (including operations, research and development, manufacture, and supply chain); organizations collecting blood, platelets, plasma, and other necessary materials; licensed medical cannabis dispensaries and licensed cannabis cultivation centers; reproductive health care providers; eye care centers, including those that sell glasses and contact lenses; home healthcare services providers; mental health and substance use providers; other healthcare facilities and suppliers and providers of any related and/or ancillary healthcare services; and entities that transport and dispose of medical materials and remains.

Specifically included in Healthcare and Public Health Operations are manufacturers, technicians, logistics, and warehouse operators and distributors of medical equipment, personal protective equipment (PPE), medical gases, pharmaceuticals, blood and blood products, vaccines, testing materials, laboratory supplies, cleaning, sanitizing, disinfecting or sterilization supplies, and tissue and paper towel products.

Healthcare and Public Health Operations also includes veterinary care and all healthcare and grooming services provided to animals.

Healthcare and Public Health Operations shall be construed broadly to avoid any impacts to the delivery of healthcare, broadly defined. Healthcare and Public Health Operations does not include fitness and exercise gyms, spas, salons, barber shops, tattoo parlors, and similar facilities.

8. <u>Human Services Operations</u>. For purposes of this Executive Order, individuals may leave their residence to work for or obtain services at any Human Services Operations, including any provider funded by the Illinois Department of Human Services, Illinois Department of Children and Family Services, or Medicaid that is providing services to the public and including state-operated, institutional, or community-based settings providing human services to the public.

Human Services Operations includes, but is not limited to: long-term care facilities; all entities licensed pursuant to the Child Care Act, 225 ILCS 10, except for day care centers, day care homes, and group day care homes; day care centers licensed as specified in Section 2, Paragraph 12(s) of this Executive Order; day programs exempt from licensure under Title 89 of the Illinois Administrative Code, Sections 377.3(a)(1)-(a)(4), (b)(2), and (c); day programs exempt from licensure under Title 89 of the Illinois Administrative Code, Section 377.3(d) (subject to the conditions governing exempt day care homes set forth in Section 1, Paragraph 12(s) of this Executive Order); residential settings and shelters for adults, seniors, children, and/or people with developmental disabilities, intellectual disabilities, substance use disorders, and/or mental illness; transitional facilities; home-based settings to provide services to individuals with physical, intellectual, and/or developmental disabilities, seniors, adults, and children; field offices that provide and help to determine eligibility for basic needs including food, cash assistance, medical coverage, child care, vocational services, rehabilitation services; developmental centers; adoption agencies; businesses that provide food, shelter, and social services, and other necessities of life for economically disadvantaged individuals, individuals with physical, intellectual, and/or developmental disabilities, or otherwise needy individuals.

Human Services Operations shall be construed broadly to avoid any impacts to the delivery of human services, broadly defined.

9. <u>Essential Infrastructure</u>. For purposes of this Executive Order, individuals may leave their residence to provide any services or perform any work necessary to offer, provision, operate, maintain and repair Essential Infrastructure.

Essential Infrastructure includes, but is not limited to: food production, distribution, and sale; construction (including, but not limited to, construction required in response to this public health emergency, hospital construction, construction of long-term care facilities, public works construction, and housing construction); building management and maintenance; airport operations; operation and maintenance of utilities, including water, sewer, and gas; electrical (including power generation, distribution, and production of raw materials); distribution centers; oil and biofuel refining; roads, highways, railroads, and public transportation; ports; cybersecurity

operations; flood control; solid waste and recycling collection and removal; and internet, video, and telecommunications systems (including the provision of essential global, national, and local infrastructure for computing services, business infrastructure, communications, and web-based services).

Essential Infrastructure shall be construed broadly to avoid any impacts to essential infrastructure, broadly defined.

10. <u>Essential Governmental Functions</u>. For purposes of this Executive Order, all first responders, emergency management personnel, emergency dispatchers, court personnel, law enforcement and corrections personnel, hazardous materials responders, child protection and child welfare personnel, housing and shelter personnel, military, and other governmental employees working for or to support Essential Businesses and Operations are categorically exempt from this Executive Order.

Essential Government Functions means all services provided by the State or any municipal, township, county, subdivision or agency of government and needed to ensure the continuing operation of the government agencies or to provide for or support the health, safety and welfare of the public, and including contractors performing Essential Government Functions. Each government body shall determine its Essential Governmental Functions and identify employees and/or contractors necessary to the performance of those functions.

This Executive Order does not apply to the United States government. Nothing in this Executive Order shall prohibit any individual from performing or accessing Essential Governmental Functions.

11. <u>Businesses covered by this Executive Order</u>. For the purposes of this Executive Order, covered businesses include any for-profit, non-profit, or educational entities, regardless of the nature of the service, the function it performs, or its corporate or entity structure.

12. <u>Essential Businesses and Operations</u>. For the purposes of this Executive Order, Essential Businesses and Operations means Healthcare and Public Health Operations, Human Services Operations, Essential Governmental Functions, and Essential Infrastructure, and the following:
   a. <u>Stores that sell groceries and medicine</u>. Grocery stores, pharmacies, certified farmers' markets, farm and produce stands, supermarkets, convenience stores, and other establishments engaged in the retail sale of groceries, canned food, dry goods, frozen foods, fresh fruits and vegetables, pet supplies, fresh meats, fish, and poultry, alcoholic and non-alcoholic beverages, and any other household consumer products (such as cleaning and personal care products). This includes stores that sell groceries, medicine, including medication not requiring a medical prescription, and also that sell other non-grocery products, and products necessary to maintaining the safety, sanitation, and essential operation of residences and Essential Businesses and Operations;
   b. <u>Food, beverage, and cannabis production and agriculture</u>. Food and beverage manufacturing, production, processing, and cultivation, including farming, livestock, fishing, baking, and other production agriculture, including cultivation, marketing, production, and distribution of animals and goods for consumption; licensed medical and adult use cannabis dispensaries and licensed cannabis cultivation centers; and businesses that provide food, shelter, and other necessities of life for animals, including animal shelters, rescues, shelters, kennels, and adoption facilities;
   c. <u>Organizations that provide charitable and social services</u>. Businesses and religious and secular nonprofit organizations, including food banks, when providing food, shelter, and social services, and other necessities of life for economically disadvantaged or otherwise needy individuals, individuals who need assistance as a result of this emergency, and people with disabilities;
   d. <u>Media</u>. Newspapers, television, radio, and other media services;
   e. <u>Gas stations and businesses needed for transportation</u>. Gas stations and auto-supply, auto-repair, and related facilities and bicycle shops and related facilities;
   f. <u>Financial Institutions</u>. Banks, currency exchanges, consumer lenders, including but not limited, to payday lenders, pawnbrokers, consumer installment lenders and sales finance lenders, credit unions, appraisers, title companies, financial markets, trading and futures exchanges, affiliates of financial institutions, entities that issue bonds, related financial institutions, and institutions selling financial products;
   g. <u>Hardware and supply stores and greenhouses, garden centers, and nurseries</u>. Hardware stores and businesses that sell electrical, plumbing, and heating material, and greenhouses, garden centers, and nurseries;
   h. <u>Critical trades</u>. Building and Construction Tradesmen and Tradeswomen, and other trades including but not limited to plumbers, electricians, exterminators, cleaning and janitorial staff for commercial and governmental properties, security staff, operating engineers, HVAC, painting, moving and relocation services, and other service providers who provide services that are necessary to maintaining the safety, sanitation, and essential operation of residences, Essential Activities, and Essential Businesses and

074

Operations;

i. **Mail, post, shipping, logistics, delivery, and pick-up services.** Post offices and other businesses that provide shipping and delivery services, and businesses that ship or deliver groceries, food, alcoholic and non-alcoholic beverages, goods or services to end users or through commercial channels;

j. **Educational institutions.** Educational institutions—including public and private pre-K-12 schools, colleges, and universities—for purposes of facilitating distance learning, performing critical research, or performing essential functions, provided that social distancing of six-feet per person is maintained to the greatest extent possible. Educational institutions may allow and establish procedures for pick-up of necessary supplies and/or student belongings and dormitory move-out if conducted in a manner consistent with public health guidelines, including Social Distancing Requirements. This Executive Order is consistent with and does not amend or supersede Executive Order 2020-05 (COVID-19 Executive Order No. 3) or Executive Order 2020-06 (COVID-19 Executive Order No. 4) except that affected schools have been closed past the April 7, 2020 date reflected in those Orders;

k. **Laundry services.** Laundromats, dry cleaners, industrial laundry services, and laundry service providers;

l. **Restaurants for consumption off-premises.** Restaurants and other facilities that prepare and serve food, but only for consumption off-premises, through such means as in-house delivery, third-party delivery, drive-through, curbside pick-up, and carry-out. Schools and other entities that typically provide food services to students or members of the public may continue to do so under this Executive Order on the condition that the food is provided to students or members of the public on a pick-up and takeaway basis only. Schools and other entities that provide food services under this exemption shall not permit the food to be eaten at the site where it is provided, or at any other gathering site due to the virus's propensity to physically impact surfaces and personal property. This Executive Order is consistent with and does not amend or supersede Section 1 of Executive Order 2020-07 (COVID-19 Executive Order No. 5) *except that* Section 1 is ordered to be extended through April 7, 2020;

m. **Supplies to work from home.** Businesses that sell, manufacture, or supply products needed for people to work from home;

n. **Supplies for Essential Businesses and Operations.** Businesses that sell, manufacture, or supply other Essential Businesses and Operations with the support or materials necessary to operate, including computers, audio and video electronics, household appliances; IT and telecommunication equipment; hardware, paint, flat glass; electrical, plumbing and heating material; sanitary equipment; personal hygiene products; food, food additives, ingredients and components; medical and orthopedic equipment; optics and photography equipment; diagnostics, food and beverages, chemicals, soaps and detergent; and firearm and ammunition suppliers and retailers for purposes of safety and security;

o. **Transportation.** Airlines, taxis, transportation network providers (such as Uber and Lyft), vehicle rental services, paratransit, and other private, public, and commercial transportation and logistics providers necessary for Essential Activities and other purposes expressly authorized in this Executive Order;

p. **Home-based care and services.** Home-based care for adults, seniors, children, and/or people with developmental disabilities, intellectual disabilities, substance use disorders, and/or mental illness, including caregivers such as nannies who may travel to the child's home to provide care, and other in-home services including meal delivery;

q. **Residential facilities and shelters.** Residential facilities and shelters for adults, seniors, children, and/or people with developmental disabilities, intellectual disabilities, substance use disorders, and/or mental illness;

r. **Professional services.** Professional services, such as legal services, accounting services, insurance services, real estate services (including appraisal and title services);

s. **Day care centers for employees exempted by this Executive Order.** Day care centers granted an emergency license pursuant to Title 89, Section 407.500 of the Illinois Administrative Code, governing Emergency Day Care Programs for children of employees exempted by this Executive Order to work as permitted. The licensing requirements for day care homes pursuant to Section 4 of the Child Care Act, 225 ILCS 10/4, are hereby suspended for family homes that receive up to 6 children for the duration of the Gubernatorial Disaster Proclamation;

t. **Manufacture, distribution, and supply chain for critical products and industries.** Manufacturing companies, distributors, and supply chain companies producing and supplying essential products and services in and for industries such as pharmaceutical, technology, biotechnology, healthcare, chemicals and sanitization, waste pickup and disposal, agriculture, food and beverage, transportation, energy, steel and steel products, petroleum and fuel, mining, construction, national defense, communications, as well as products used by other Essential Businesses and Operations;

u. **Critical labor union functions.** Labor Union essential activities including the administration of health and welfare funds and personnel checking on the well-being and safety of members providing services in Essential Businesses and Operations – provided that these checks should be done by telephone or remotely where possible;

v. **Hotels and motels.** Hotels and motels, to the extent used for lodging and delivery or carry-out food

075

services; and

  w. <u>Funeral services.</u> Funeral, mortuary, cremation, burial, cemetery, and related services.

13. <u>Minimum Basic Operations.</u> For the purposes of this Executive Order, Minimum Basic Operations include the following, provided that employees comply with Social Distancing Requirements, to the extent possible, while carrying out such operations:

  1. The minimum necessary activities to maintain the value of the business's inventory, preserve the condition of the business's physical plant and equipment, ensure security, process payroll and employee benefits, or for related functions.

  2. The minimum necessary activities to facilitate employees of the business being able to continue to work remotely from their residences.

  3. For retail stores, fulfilling online and telephonic orders through pick-up outside the store or delivery.

14. <u>Essential Travel.</u> For the purposes of this Executive Order, Essential Travel includes travel for any of the following purposes. Individuals engaged in any Essential Travel must comply with all Social Distancing Requirements as defined in this Section.

  1. Any travel related to the provision of or access to Essential Activities, Essential Governmental Functions, Essential Businesses and Operations, or Minimum Basic Operations.

  2. Travel to care for elderly, minors, dependents, persons with disabilities, or other vulnerable persons.

  3. Travel to or from educational institutions for purposes of receiving materials for distance learning, for receiving meals, and any other related services.

  4. Travel to return to a place of residence from outside the jurisdiction.

  5. Travel required by law enforcement or court order, including to transport children pursuant to a custody agreement.

  6. Travel required for non-residents to return to their place of residence outside the State. Individuals are strongly encouraged to verify that their transportation out of the State remains available and functional prior to commencing such travel.

15. <u>Social Distancing, Face Covering, and PPE Requirements.</u> For purposes of this Executive Order, Social Distancing Requirements includes maintaining at least six-foot social distancing from other individuals, washing hands with soap and water for at least twenty seconds as frequently as possible or using hand sanitizer, covering coughs or sneezes (into the sleeve or elbow, not hands), regularly cleaning high-touch surfaces, and not shaking hands.

  1. <u>Required measures.</u> Essential Businesses and Operations and businesses engaged in Minimum Basic Operations must take proactive measures to ensure compliance with Social Distancing Requirements, including where possible:

    1. <u>Designate six-foot distances.</u> Designating with signage, tape, or by other means six-foot spacing for employees and customers in line to maintain appropriate distance;

    2. <u>Hand sanitizer and sanitizing products.</u> Having hand sanitizer and sanitizing products readily available for employees and customers;

    3. <u>Separate operating hours for vulnerable populations.</u> Implementing separate operating hours for elderly and vulnerable customers; and

    4. <u>Online and remote access.</u> Posting online whether a facility is open and how best to reach the facility and continue services by phone or remotely.

    5. <u>Face Coverings and PPE.</u> Providing employees with appropriate face coverings and requiring that employees wear face coverings where maintaining a six-foot social distance is not possible at all times. When the work circumstances require, providing employees with other PPE in addition to face coverings.

16. <u>Intent of this Executive Order.</u> The intent of this Executive Order is to ensure that the maximum number of people self-isolate in their places of residence to the maximum extent feasible, while enabling essential services to continue, to slow the spread of COVID-19 to the greatest extent possible. When people need to leave their places of residence, whether to perform Essential Activities, or to otherwise facilitate authorized activities necessary for continuity of social and commercial life, they should at all times and as much as reasonably possible comply with Social Distancing Requirements. All provisions of this Executive Order should be interpreted to effectuate this intent. Businesses not specifically addressed by this Executive Order generally should cease activities and reduce to Minimum Basic Operations.

17. <u>Enforcement.</u> This Executive Order may be enforced by State and local law enforcement pursuant to, *inter alia*, Section 7, Section 15, Section 18, and Section 19 of the Illinois Emergency Management Agency Act, 20 ILCS 3305.

18. Businesses must follow guidance provided or published by: the Office of the Governor, the Illinois Department of Commerce and Economic Opportunity, and State and local law enforcement regarding whether they qualify as

076

Essential; and the Illinois Department of Public Health, local public health departments, and the Workplace Rights Bureau of the Office of the Illinois Attorney General with respect to Social Distancing Requirements. Pursuant to Section 25(b) of the Whistleblower Act, 740 ILCS 174, businesses are prohibited from retaliating against an employee for disclosing information where the employee has reasonable cause to believe that the information discloses a violation of this Order

19. **No limitation on authority.** Nothing in this Executive Order shall, in any way, alter or modify any existing legal authority allowing the State or any county, or local government body from ordering (1) any quarantine or isolation that may require an individual to remain inside a particular residential property or medical facility for a limited period of time, including the duration of this public health emergency, or (2) any closure of a specific location for a limited period of time, including the duration of this public health emergency. Nothing in this Executive Order shall, in any way, alter or modify any existing legal authority allowing a county or local government body to enact provisions that are stricter than those in this Executive Order.

**Section 3. Savings clause.**

If any provision of this Executive Order or its application to any person or circumstance is held invalid by any court of competent jurisdiction, this invalidity does not affect any other provision or application of this Executive Order, which can be given effect without the invalid provision or application. To achieve this purpose, the provisions of this Executive Order are declared to be severable. This Executive Order is meant to be read consistently with any Court order regarding this Executive Order.

**JB Pritzker, Governor**

Issued by the Governor April 30, 2020

Filed by the Secretary of State April 30, 2020

---

Stay Informed

Emergencies & Disasters (https://www.illinois.gov/ready)

Flag Honors (http://www2/News/flag-honors.aspx)

Road Conditions (http://www.gettingaroundillinois.com/)

Traffic Alerts (http://www.iltrafficalert.com/)

Get Email Updates (https://www.illinois.gov/gov/Pages/CommunicationsOptin.aspx)

Helpful Links

Illinois Privacy Info (/Pages/About/Privacy.aspx)

Kids Privacy (/Pages/About/Kids-Privacy.aspx)

Contact Us (/Pages/About/ContactUs.aspx)

FOIA Contacts (/Pages/FOIA-Contacts.aspx)

State Press Contacts (https://www.illinois.gov/cms/agency/media/relations/Pages/StateContacts.aspx)

Stay Connected

(http://twitter.com/GovPritzker)

(https://www.facebook.com/GovPritzker)

(http://instagram.com/GovPritzker)


Select Language
Powered by Google Translate (https://translate.google.com)

---

(/)

Web Accessibility (http://www.dhs.state.il.us/page.aspx?item=32765)

Missing & Exploited Children (http://www.missingkids.com/)   Amber Alerts (http://www.amberillinois.org/)

Illinois Privacy Info (/Pages/About/Privacy.aspx)

Governor JB Pritzker (/sites/gov)

© 2020 State of Illinois (/)

077



**Illinois
Liquor Control
Commission**

Governor JB Pritzker
Cynthia Berg, Chairman
Chimaobi Enyia, Executive Director

100 West Randolph Street, Suite 7-801, Chicago, IL 60601
300 West Jefferson Street, Suite 300, Springfield, IL 62702

## *Cease and Desist*

  Due to the outbreak of COVID-19 and the declaration of a national public emergency, federal, state and local public officials have been required to take extraordinary measures to protect the health, safety and welfare of its citizens.

  Please be advised that your establishment is unlawfully operating amidst a declared limitation on service that is necessary and proper to prevent further spreading of the COVID-19 pathogen. You must cease and desist all unlawful operations, specifically allowing on premises consumption, **immediately**.

  Consistent with general health and safety actions taken by many public officials, and under the advice and authority of State public health officials, the Governor of the State of Illinois has ordered that on premises consumption cease at establishments serving food and beverages. The Governor's Order does not prohibit carry out, drive through, curb side pickup, or home delivery services.

  In consideration of the Executive Order, the Illinois Liquor Control Commission ("State Commission") has the responsibility and authority to take necessary actions to protect the "health, safety, and welfare of the People of the State of Illinois." 235 ILCS 5-1-2; 235 ILCS 5/3-12(a)(2); 235 ILCS 5/3-4. Furthermore, the State Commission has the responsibility and authority to ensure that its license holders abide by all State and Federal laws. 11 Ill. Admin. Code 100.30. **Your non-compliance with the Governor's Order could result in _revocation_ of your ILCC license(s) or other criminal and civil violations.**

  Should you have any questions, please contact the Chief of Enforcement for the ILCC, Les Peterson, at Les.Peterson@Illinois.gov.

Signed:

*Les Peterson*

Les Peterson
Chief of Enforcement
Illinois Liquor Control Commission
Date: May 6, 2020

Business Name and Address:   POOPY'S PUB & GRUB 1030 VIADUCT RD SAVANNA IL 61074-2534

Chicago Office | P: 312-814-2206 | F: 312-814-2241
Springfield Office | P: 217-782-2136 | P: 217-524-1911
Email: ILCC@illinois.gov | Website: illinois.gov/ILCC

**EXHIBIT**

tabbies

**3**

Case No. _____, _____ Date _____.

# ORDER FOR CLOSURE OF FACILITY / PLACE

The _____ (name of health department) has determined, based upon the information contained below, that the facility or other place referred to in this order is, or may be, the source of, or contaminated with a dangerously contagious or infectious disease. As a result, it is required that this facility or other place remain closed until it is no longer poses a risk of contagion or infection to others.

## Section A. Type of Order

This order for closure is made upon (check all that apply):
☐ **Voluntary (Consented)** (see Section H)
☐ **Immediate** *(If this is an immediate order then the health department may order closure without consent or a court order if immediate action is required to protect the public from a dangerously contagious or infectious disease. The health department must as soon as practical (within 48 hours after issuing immediate order) obtain consent or request a court order except when court system is unavailable or it is impossible to do so.) 20 ILCS 2305/2(c)*

## Section B. Information

**Place Subject to Closure:**
Name of Place:_____
Address: (Street)_____ (Apt./Rm.#)_____ (City)_____
(State/Country)_____ (Zip)_____ (Telephone)_____ (Fax)_____
(Cell/pager)_____ (Email)_____

**Owner of Place Subject to Closure:**
Name: (Last)_____ (First)_____ (M.I.)_____ Date of Birth: ___-___-____

**Current Location of Owner:**
Address: (Street)_____ (Apt./Rm.#)_____ (City)_____
(State/Country)_____ (Zip)_____ (Telephone)_____ (Fax)_____
(Cell/pager)_____ (Email)_____

**Emergency or Other Contact Information of Owner:**
Name: (Last)_____ (First)_____ Relationship: _____
Address: (Street)_____ (Apt./Rm.#)_____ (City)_____
(State/Country)_____ (Zip)_____ (Telephone)_____ (Fax)_____
(Cell/pager)_____ (Email)_____

## Section C: Department of Public Health Findings

1. A reasonable belief exists that the place identified in this order is or is suspected of being contaminated with the following dangerously contagious or infectious disease: _____

2. Closure is ordered based upon the following findings:
   ☐ Physical Examination  ☐ Medical Evaluation  ☐ Laboratory Testing  ☐ Environmental Testing
   ☐ Environmental or Human Exposure  ☐ Other Information

   *Describe the facts in support of closure:* _____
   _____
   _____

3. Duration of Closure: _____

EXHIBIT
4

Case No. _____ Date _____

## Section D: Terms of Closure

The place subject to this order is required to close and remain closed. No person is permitted access to the premises without prior approval from the local health department. Persons who are permitted access by the local health department must follow all instructions, policies and procedures determined by the local health department.

## Section E: Statement of Legal Rights and Duties

1. The _____ (name of health department) has ordered this place to be closed and made off limits to members of the community, and requires that you follow the instructions set forth in Section D above, because it is believed that this place has been contaminated with a dangerously contagious or infectious disease which must be controlled in order to protect others from becoming infected.

2. This closure order will remain in effect only as long as there is a danger of spreading the disease to others.

3. _____ (name of health department) requests that you sign the consent agreement contained in Section H of this order. If you do not consent, then the _____ (name of health department) will seek a court order to require that this place remain closed. **If this is an immediate order for closure then the _____ (name of health department) is not required to obtain your consent or file a petition seeking a court order until after issuing the order.** The health department must as soon as practical (within 48 hours after issuing immediate order) obtain consent or request a court order except when court system is unavailable or it is impossible to do so. 20 ILCS 2305/2(c)

4. You have the right to counsel. If you are indigent, the court will appoint counsel for you. 20 ILCS 2305/2(c).

## Section F: Signature of Authorizing Official

_____ (name of health department)

Address: (Street)_____ (Apt./Rm.#)_____ (City)_____
(State/Country)_____ (Zip)_____ (Telephone)_____ (Fax)_____
(Business Phone)_____ (After-hours Phone)_____

_____          _____
Signature                                                             Date and Time

Title _____

## Section G: Enforcement

Any person who knowingly or maliciously disseminates any false information or report concerning the existence of any dangerously contagious or infectious disease in connection with the Department's power of quarantine, isolation and closure or refuses to comply with a quarantine, isolation or closure order is guilty of a Class A misdemeanor. (20 ILCS 2305/2(k).)

## Section H: Consent Agreement to Closure (Optional, if individual consents)

I, _____, voluntarily agree to allow the place to be closed as ordered by the _____ (name of health department). I understand that my compliance with this closure order is important to safeguarding the public's health and that if I violate its terms, I will put myself at risk, endanger the community's health, and risk spreading a communicable disease to others. I have received a copy of, and have read or had

Case No. _____ Date _____

explained to me, information on the disease _____. The terms and conditions of the closure order have been explained to me, I have had a chance to ask questions, and they were answered to my satisfaction.

I understand that I must comply with this closure order and that if I wish to withdraw my voluntary consent to this closure order I will notify _____ (name of health department) at (xxx) xxx-xxxx (during normal business hours) or (xxx) xxx-xxxx (after hours). If I withdraw my voluntary consent to this closure order, the _____ (name of health department) will seek a court order to require that the place remain closed. If this is an immediate order for closure then the _____ (name of health department) is not required to obtain my consent or file a petition seeking a court order until after issuing the order. The health department must as soon as practical (within 48 hours after issuing immediate order) obtain consent or request a court order except when court system is unavailable or it is impossible to do so.

I understand that if I violate this order that I may be guilty of committing a Class A misdemeanor as described in Section G of this order.

I understand that if I have any questions regarding this closure order I should contact _____ (name of health department) at (xxx) xxx-xxxx (during normal business hours) or (xxx) xxx-xxxx (after hours).

_____    _____
Signature                                         Date and Time

**Section I: Legal Authority**

This order is issued pursuant to the legal authority contained in the Department of Public Health Act (20 ILCS 2305/2).

# Joint Committee on Administrative Rules

# ADMINISTRATIVE CODE

### TITLE 77: PUBLIC HEALTH
### CHAPTER I: DEPARTMENT OF PUBLIC HEALTH
### SUBCHAPTER k: COMMUNICABLE DISEASE CONTROL AND IMMUNIZATIONS
### PART 690 CONTROL OF COMMUNICABLE DISEASES CODE
### SECTION 690.1330 ORDER AND PROCEDURE FOR ISOLATION, QUARANTINE AND CLOSURE

---

**Section 690.1330  Order and Procedure for Isolation, Quarantine and Closure**

a)  *The Department or* certified local health department *may order a person or group of persons to be quarantined or isolated or may order a place to be closed and made off limits to the public on an immediate basis without prior consent or court order if, in the reasonable judgment of the Department* or certified local health department, *immediate action is required to protect the public from a dangerously contagious or infectious disease.*  (Section 2(c) of the Act) The determination that immediate action is required shall be based on the following:

   1)  The Department or the certified local health department has reason to believe that a person or group of persons is, or is suspected to be, infected with, exposed to, or contaminated with a dangerously contagious or infectious disease that could spread to or contaminate others if remedial action is not taken; and

   2)  The Department or the certified local health department has reason to believe that the person or group of persons would pose a serious and imminent risk to the health and safety of others if not detained for isolation; and

   3)  The Department or the certified local health department has first made efforts, which shall be documented, to obtain voluntary compliance with requests for medical examination, testing, treatment, counseling, vaccination, decontamination of persons or animals, isolation, and inspection and closure of facilities, or has determined that seeking voluntary compliance would create a risk of serious harm.



EXHIBIT
5

b)  *All police officers, sheriffs and all other officers and employees of the State or any locality shall enforce the rules and regulations so adopted and orders issued by the Department* or the certified local health department.  (Section 2(a) of the Act)  The

Department or certified local health department may request the assistance of police officers, sheriffs, and all other officers and employees of any political subdivision within the jurisdiction of the Department or certified local health department to immediately enforce an order given to effectuate the purposes of this Subpart.

c) If the Department or certified local health department orders the immediate isolation or quarantine of a person or group of persons:

1) The immediate isolation or quarantine order shall be for a period not to exceed the period of incubation and communicability, as determined by the Department or certified local health department, for the dangerously contagious or infectious disease.

2) The Department or certified local health department shall issue a written isolation or quarantine order within 24 hours after the commencement of isolation or quarantine pursuant to a verbal order, which shall specify the following:

A) The identity of all persons or groups subject to quarantine or isolation, if known;

B) The premises subject to quarantine, isolation or closure;

C) *Notice of the right to counsel;*

D) *Notice that if the person or owner is indigent, the court will appoint counsel for that person or owner;*

E) *Notice of the reason for the order for isolation, quarantine or closure,* including the suspected dangerously contagious or infectious disease, if known;

F) *Notice of whether the order is an immediate order, and if so, the time frame for the Department* or certified local health department *to seek consent or to file a petition requesting a court order;*

G) *Notice of the anticipated duration of the isolation, quarantine, or closure,* including the dates and times at which isolation, quarantine, or closure commences and ends (Section 2(c) of the Act);

H) A statement of the measures taken by the Department or the certified local health department to seek voluntary compliance or the basis on which the Department or the certified local health department determined that seeking voluntary compliance would create a risk of serious harm;

I) A statement regarding the medical basis on which isolation,

quarantine, or closure is justified, e.g., clinical manifestations; physical examination; laboratory tests, diagnostic tests or other medical tests; epidemiologic information; or other evidence of exposure or infection available to the Department or certified local health department at the time;

J) A statement that such persons may refuse examination, medical monitoring, medical treatment, prophylaxis, or vaccination, but remain subject to isolation or quarantine; and

K) A statement that, at any time while the isolation, quarantine or closure order is in effect, persons under isolation, quarantine, or closure may request a hearing to review the isolation, quarantine or closure order as set forth in Section 690.1345 of this Subpart.

d) Verbal Orders.

1) The Department or certified local health department may issue a verbal order of isolation, quarantine, or closure without prior notice to the person or group of persons if the delay in imposing a written order of isolation, quarantine, or closure would jeopardize the Department's or certified local health department's ability to prevent or limit:

A) The transmission of a dangerously contagious or infectious disease that poses a threat to the public; or

B) The transmission of an infectious agent or possibly infectious agent that poses a threat to the public health;

2) A verbal order of isolation, quarantine, or closure issued under this Subpart:

A) Is valid for 24 hours and shall be followed up with a written order;

B) May be verbally communicated by a first responder to the person or group of persons subject to isolation, quarantine, or closure; and

C) May be enforced by the first responder until a written order is issued.

e) *In the event of an immediate order issued without prior consent or court order, the Department* or certified local health department *shall, as soon as practical, within 48 hours after issuing the order, obtain the consent of the person or owner or file a petition requesting a court order authorizing the isolation, quarantine or closure. When exigent circumstances exist that cause the court system to be unavailable or that make it impossible to obtain consent or file a petition within 48 hours after issuance of an immediate order, the Department* or certified local health department *must obtain consent or file a petition requesting a court order as soon as reasonably possible.* (Section 2(c) of the Act)

1)    The petition for a court order authorizing involuntary isolation or quarantine of a person or group of persons or the closure of premises shall specify the following:

      A)    The identity of all persons or groups subject to isolation or quarantine, if known;

      B)    The premises subject to isolation, quarantine or closure;

      C)    The reason for the order for isolation, quarantine or closure, including the suspected dangerously contagious or infectious disease if known;

      D)    The date and time at which isolation, quarantine or closure will commence;

      E)    The anticipated duration of isolation, quarantine, or closure based on the suspected dangerously contagious or infectious disease, if known;

      F)    The measures taken by the Department or the certified local health department to seek voluntary compliance or the basis on which the Department or the certified local health department determined that seeking voluntary compliance would create a risk of serious harm;

      G)    The medical basis on which isolation, quarantine or closure is justified, e.g., clinical manifestations; physical examination; laboratory tests, diagnostic tests or other medical tests; epidemiologic information; or other evidence of exposure or infection available to the Department or certified local health department at the time.

2)    The petition shall be accompanied by the declaration of the Department or the certified local health department attesting to the facts asserted in the petition, together with any further information that may be relevant and material to the court's consideration.

f)    Upon filing a petition requesting a court order authorizing the isolation, quarantine or closure, or a petition requesting continued isolation, quarantine, or closure, the Department or certified local health department shall serve a notice of the hearing upon the person or persons who are being quarantined or isolated or upon the owner of the property that is being closed at least 24 hours before the hearing. If it is impractical to provide individual notice to large groups who are isolated or quarantined, a copy of the notice shall be posted in a designated location. The notice shall contain the following information:

1)    The time, date and place of the hearing;

2)    The grounds and underlying facts upon which continued isolation, quarantine or closure is sought;

3)    The person's right to appear at the hearing; and

4)    The person's right to counsel, including the right, if the person is indigent, to be represented by counsel designated by the court.

g)    *To obtain a court order, the Department* or certified local health department, *by clear and convincing evidence, must prove that the public's health and welfare are significantly endangered by a person or group of persons that has, that is suspected of having, that has been exposed to, or that is reasonably believed to have been exposed to a dangerously contagious or infectious disease, including non-compliant tuberculosis patients or* that the public's health and welfare have been significantly endangered *by a place where there is a significant amount of activity likely to spread a dangerously contagious or infectious disease. The Department* or certified local health department *must also prove that all other reasonable means of correcting the problem have been exhausted and no less restrictive alternative exists. For purposes of this subsection, in determining whether no less restrictive alternative exists, the court shall consider evidence showing that, under the circumstances presented by the case in which an order is sought, quarantine or isolation is the measure provided for in a rule of the Department or in guidelines issued by the Centers for Disease Control and Prevention or the World Health Organization.* (Section 2(c) of the Act)

1)    Isolation, quarantine, or closure authorized as a result of a court order shall be for a period not to exceed 30 days from the date of issuance of the court order.

2)    The Department or certified local health department may petition the court to continue the isolation, quarantine, or closure beyond the initial 30 days.

3)    The Department or the certified local health department may petition the court to provide interpreters.

4)    Prior to the expiration of a court order for continued isolation, quarantine, or closure, the Department or certified local health department may petition the court to continue isolation, quarantine, or closure, provided that:

A)    The Department or certified local health department provides the court with a reasonable basis to require continued isolation, quarantine, or closure to prevent a serious and imminent threat to the health and safety of others.

B)    The request for a continued order shall be for a period not to exceed 30 days.

(Source:  Added at 32 Ill. Reg. 3777, effective March 3, 2008)



ILLINOIS DEPARTMENT OF PUBLIC HEALTH
**IDPH**
PROTECTING HEALTH, IMPROVING LIVES

# ENFORCEMENT
## Executive Orders 2020-10 and 2020-18

## JB PRITZKER, GOVERNOR        NGOZI O. EZIKE, MD, DIRECTOR

The World Health Organization has declared COVID-19 to be a pandemic. The President of United States has declared the COVID-19 outbreak to be a national emergency. The Governor of Illinois has proclaimed COVID-19 to be a state disaster and declared all counties in the state as a disaster area. Federal, state and local public officials have been required to take extraordinary measures to protect the health, safety and welfare of citizens.

Per Executive Order 2020-10, Section 1, which has been extended through April 30, 2020 by Executive Order 2020-18, Part 1: Beginning March 21, 2020, at 5 p.m., all Illinois citizens are ordered to stay at home or at their place of residence. All persons may leave their homes or place of residence only for Essential Activities, Essential Governmental Functions, or to operate Essential Businesses and Operations, as set forth in the Executive Order, and must at all times and as much as reasonably possible maintain social distancing of at least six feet from any other person. Essential activities include activities in furtherance of health and safety; obtaining necessary supplies and services; outdoor activity provided that social distancing is practiced; work related to essential businesses or operations; caring for family, friends, and pets; and obtaining public health or human services.

Per Executive Order 2020-10, Section 2, which has been extended through April 30, 2020 by Executive Order 2020-18, Part 1: Beginning March 21, 2020 at 5 p.m., all businesses and operations in the State, except certain Essential Businesses and Operations that are specifically defined in the Executive Order, are required to cease all activities, unless those activities involve employees working at their own residences. Essential Businesses and Operations include the following: stores that sell groceries and medicines; producers of food, beverages, or cannabis; charitable or social service organizations; media; gas stations and businesses needed for transportation; financial institutions; hardware and supply stores; critical trades; mail, post, shipping, logistics, and delivery and pick-up services; educational institutions (for the purpose of facilitating distance learning or other essential functions); laundry services; restaurants for consumption off premises; supplies to work from home; supplies for essential business and operations; travel; home care; residential care; legal, accounting and insurance services; certain day care locations; manufacture, distribution, and supply chain for critical products and industries; critical labor union functions; hotels and motels; and funeral functions.

Per Executive Order 2020-10, Section 3, which has been extended through April 30, 2020 by Executive Order 2020-18, Part 1: Beginning March 21, 2020 at 5 p.m., all public and private gatherings of any number of people occurring outside a single household or living unit are prohibited, except for certain limited purposes. This Executive Order includes all places of public amusement, whether indoors or outdoors, including but not limited to, locations with amusement rides, carnivals, amusement parks, water parks,

EXHIBIT
6



**ILLINOIS DEPARTMENT OF PUBLIC HEALTH**
# IDPH
PROTECTING HEALTH, IMPROVING LIVES

# ENFORCEMENT
## Executive Orders 2020-10 and 2020-18

## JB PRITZKER, GOVERNOR     NGOZI O. EZIKE, MD, DIRECTOR

aquariums, zoos, museums, arcades, fairs, children's play centers, playgrounds, funplexes, theme parks, bowling alleys, movie and other theaters, concert and music halls, and country clubs or social clubs.

Per Executive Order 2020-10, Section 4, which has been extended through April 30, 2020 by Executive Order 2020-18, Part 1: All travel, except Essential Travel, is prohibited. People riding on public transit for essential business and personal activities must comply with Social Distancing Requirements to the greatest extent feasible.

Please be advised that your establishment is required to adhere to these Executive Orders, and that these steps are necessary and proper to prevent further spreading of COVID-19. This IDPH directive will apply to any subsequent Executive Orders ordering the same and will not terminate until such time the State of Illinois no longer has a proclamation of disaster related to the COVID-19 pandemic.

If you do not adhere to these Executive Orders, the Illinois Department of Public Health and Certified Local Health Departments have the authority, pursuant to the Department of Public Health Act (20 ILCS 2305/1-1.1 *et seq.*), the Civil Administrative Code of Illinois (Department of Public Health Powers and Duties Law) (20 ILCS 2310/1 *et seq.*) and the Control of Communicable Diseases Code (77 Ill. Adm. Code 690), to order that a place be closed and made off limits to the public "to prevent the probable spread of a dangerously contagious or infectious disease . . . until such time as the condition can be corrected or the danger to the public health eliminated or reduced in such a manner that no substantial danger to the public's health any longer exists." 20 ILCS 2305/2(b). The process of issuing such an order is set forth in 20 ILCS 2305/2(c). Furthermore, police officers, sheriffs and all other officers in Illinois are authorized to enforce such orders.

Signed: